## Deaton v. Commonwealth.

(Decided March 25, 1927.)

## Appeal from Breathitt Circuit Court.

1. Homicide.—In prosecution for murder, evidence held to sustain conviction of manslaughter.

2. Criminal Law.—In prosecution for murder, an argument of commonwealth's attorney: "I know the defendant swore falsely. He lied on the witness stand," held justified by the evidence, or proper deductions therefrom, and not improper.

3. Criminal Law.—In prosecution for murder, court's remark, "I think he is getting along all right," in response to objection to argument of commonwealth's attorney that he knew defendant swore falsely and that defendant had lied on the witness stand, held not prejudicial.

GRANNIS BACH for appellant.

FRANK E. DAUGHERTY, Attorney General, and MOORMAN DITTO, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE LOGAN—Affirming.

On Sunday night before the November election in 1925 the appellant, Sam Deaton, shot and killed Dave Fugate in Breathitt county, Kentucky. At the March term, 1926, of the Breathitt circuit court he was tried on the charge and the jury found him guilty of manslaughter and fixed his punishment at twenty-one years in the penitentiary. On this appeal he urged two grounds for reversal. (1) The verdict is flagrantly against the evidence. (2) Misconduct of the commonwealth's attorney and the trial judge during the argument of the case before the jury.

The evidence discloses that three or four of the Fugates, two of the Deatons, Monroe Henson, Jason Collins, Hige White, Lige White and two or three others got together on Leatherwood about nine or ten o'clock at night. In the crowd was a banjo, a deck of cards and some moonshine whiskey. All three of these instrumentalities were used by the crowd of young men in furtherance of their pleasures. Nothing in the record indicated the purpose of the meeting. It just happened. They built a fire out in the open, played the banjo, danced, played cards and drank liquor. The meeting was peaceful and continued until about two o'clock in the morning.

Appellant was standing a little distance from the crowd about that hour when he called the decedent, Dave Fugate, to him. Dave Fugate had a shot gun which he had carried around with him under his arm during the revelries. At times the shot gun, referred to in the evidence as an animated being of the feminine gender, was left lying on the hillside. He had borrowed the gun from his brother some days before and had started to take it home when he stopped at the place of assembly. He had the shotgun under his arm when he responded to the call of appellant. It is not clear whether any words were spoken when Fugate came up to the point where appellant was standing. The gun was thrown over the hill into the creek, and it is testified to by witnesses for the commonwealth that this was done before the shot was fired. Appellant fired one shot, the bullet striking Fugate in the forehead and instantly killing him. He then started on his way down the creek when Wick Fugate, a brother of the slain man, pursued him and fired at him. He then shot Wick Fugate and seriously wounded him. No motive is shown for the crime. Fugate appears to have been a peaceful, harmless young man. There had been no previous difficulty between them. The facts disclosed by the witnesses for the commonwealth make it appear that the killing was a wanton murder.

Appellant does not help his case by his evidence. He testified that Fugate came to where he was, punched the muzzle of the shotgun into his breast and robbed him of $3.00 by taking it from his pocket, and that he shot him and then took the gun from him and threw it over the bank into the creek. No one supports him in his claim that he was robbed or that the gun was drawn on him. He stated that he shot to save his own life. It appears that he was not well acquainted in the neighborhood, and some time after he had killed Fugate he came to the home of a brother of the dead man, to which place the body had been taken. He stated that he was forced to go in the home and look at the dead body. He did go in the house, and there were present the father and two or three of the brothers of Dave Fugate. They offered to do him no harm. He denied that he did the killing and his actions were queer and unnatural while he was there.

Certainly there is no merit in the contention that the verdict is not supported by the evidence. The witnesses did not testify with that willingness and fullness that

might have been expected. The evidence leaves the impression that something was held back. It is amply sufficient, however, to sustain the verdict.

While the commonwealth's attorney was addressing the jury he said: "I know the defendant swore falsely. He lied on the witness stand." Objection was made to this statement, and the court replied to the objection, "I think he is getting along all right." We cannot control the language used by an attorney as long as it is justified by the evidence or proper deductions therefrom. The attorney was well within his rights in his argument that appellant swore falsely, as that fact was deducible from the evidence. He might have clothed that idea in more diplomatic language and it would have looked better and the same idea would have been presented. The response made by the court to the objection could not have prejudiced the minds of the jurors. If the court had simply overruled the objection it would have been better, but the same impression certainly would have been left in the minds of the jurors. There is no difference in the court's saying that "I overrule this objection" and in making the statement which he did make at the time. The ground urged on this point for reversal is too trivial to be considered. The appellant killed a man without lawful excuse and he thereby fell under the condemnation of the law. The court and the jury discharged the duties imposed upon them in a fair and impartial manner, and that is the end of the matter.

Judgment affirmed.